Case number 11-1810, Illinois State Bar Association v. Timothy Cavenagh. Good morning, Your Honors. Peter Bustamante, BUSDA, and I am the ADO of Cavenagh. Very good. Illinois State Bar? I am a former plaintiff appellee, Robert Chemmers from Pretzel and Stauffer, with my associate on the brief, Adrian Brewer. Very good. Anytime you'll be ready, Mr. Bustamante. We have 15 minutes to sign, but if it goes over, we don't look at our watches. Keep it interesting. Thank you, Your Honors. May it please the Court. Your Honors, when we buy a policy of insurance, are we buying protection or are we buying into a lawsuit by our insurance company? In this case, Mr. Cavenagh bought a policy of insurance from Ismael Mutual and for years paid premiums. And then Ismael Mutual promised to defend and indemnify him, and when the time came to do that, they said no. Well, to defend him, right, to go into court, it's not indemnifying yet, or is it indemnification? Your Honor, I am terribly sorry, but I'm having a lot of difficulty hearing you. You said that the issue is whether they should indemnify him. Defend and indemnify. Right. And frankly, you know, we're here because there's a summary judgment that was entered granting Ismael Mutual this declaratory judgment action, but also because the Court dismissed our counterclaims against Ismael Mutual. And what happens in this case is that once those counterclaims are dismissed, summary judgment is a fair complaint. Nobody's going to change that, because we cannot then raise those facts we were alleging that happened here that would preclude the entry of summary judgment. So what we have in this case, Your Honors, is a cause of action that begins with a plaintiff and a defendant where defense counsel is hired to represent his client, and defense counsel does nothing, doesn't file an appearance, even though the Court grants the relief to do so, doesn't do anything during the whole case of the litigation, and he tries to settle the case. But when the case does not settle, defense counsel himself, Mr. Bogus, he sends a letter to Mr. Conlon saying, you know what, we're going to have to proceed with the litigation, no hold barred, let's go. And he still does nothing. Now, what happens is that a default judgment is entered. I think we're all familiar with the facts of the case. If you want to get to the argument, which basically, you know, as I read these briefs, and I've read them several times, as I'm sure my colleagues have, you haven't yet focused on any of the issues that are before this Court, specifically whether under the contract of insurance there is a breach of contract action. Isn't that the first thing you're heading toward? Well, we're heading that way, Judge. And what we did is we crafted this counterclaim, and we put all the allegations of everything that happened here. So is there a breach of contract? Well, that's part of the issue, and that is, are the allegations factual as far as the ISBA mutual insurance company is concerned, or are they mere legal conclusions? That's really the reason the Court dismissed them. Well, I'm going to suggest to you, Your Honor, that they are factual. All right. It is factual. How are they factual? It is factual when we say, ISBA mutual, you instigated the filing of a third-party complaint. How do we know that? We know that because an insurance company does not let its lawyers become rogue lawyers. When anybody who knows about insurance defense knows, insurance defense lawyers report constantly. They always get permission. Insurance companies make conflicts checks. I worked insurance defense. I want to file a third-party complaint. Let me make sure that you can do this. What are your allegations? Is it one of our insurers? Are we going to be shooting ourselves in the foot when we sue our own insured? Mr. Bustamante, you alleged certain things. Basically, the ISBA, acting through their agents, discussed the manner. Okay. Where is the factual content? The factual is that who else is going to do that but ISBA's agents? ISBA is a corporation. It's a company. It assigns an adjuster to a case. The adjuster controls the case. It requires monthly reporting or more frequently. But what you're telling us now are all conclusions, true? Well, no, Your Honor. These are based on knowledge that we have as practicing attorneys. How can it be a conclusion to believe that an insurance company is going to act in a vacuum? Conclusions as opposed to facts. Like when did ISBA and FOGAS meet with CONASEC? When did they do this? And when they did this, what exactly did they say? Those would be facts, not saying they discussed. Well, Your Honor, here comes the rub, all right? These things happen for a reason, for a purpose. This third-party complaint was filed for a purpose. Who was behind the purpose? How do we get to those facts if we're precluded from getting discovery? Well, at the time the discovery was filed, wasn't it true that really the only thing that was left was the breach of contract action? No, Your Honor. If I recall correctly, there were two causes of action that were left over, and breach of contract was one of them. I don't recall if another cause of action was also left over. But nevertheless, we should also have gotten discovery with respect to the summary judgment, not only on our contract claim but also on the summary judgment. How can we possibly answer summary judgment if we don't even get, okay, the underlying file? What investigation did you do as for mutual in this respect? Mr. Kamena says I've been served with this lawsuit. I'm making a claim. Why? Shouldn't the insurance company at least say that Mr. Kamena – Counsel, don't cut off the judge. It's very bad form. Basically, if we – you know, I keep – this is the same problem I had when I read the briefs, frankly, Mr. Bustamante. There's a lot of hand wringing and there's a lot of thinly veiled outrage, but I'm looking at whether the elements that are necessary to be proved were ever in there. And you start with the breach of contract action, which basically says that we will not – represent you, will not defend you or indemnify you if this is an intentional or fraudulent act. And even if you take your premise to the extreme, what you basically have is a frivolous pleading. And if it's a frivolous pleading, there are remedies for a frivolous pleading. We have remedies for that. But really, what this comes down to on the breach of contract is, was this really a negligent act or could it be seen as a negligent act? Or do the facts not only label this fraudulent and intentional, but really, because of the scheme which you allege, completely negate the possibility that this is a negligent act. And so in my reading, it falls outside, not inside, the terms of the policy. Except for this, Your Honor, that the policy says that we will defend you even from false or fraudulent claims. In order to do that, the insurance company under its contract, in a breach thereof, failed to even interview Mr. Kavanaugh. Yeah, but the fraudulent claims relates to whether or not the acts alleged are negligent or whether they are intentional. Of course there's a duty to defend against fraudulent and frivolous claims. But the claim that's alleged has to come within the terms of the policy. So the question is, are these allegations in the third-party complaint for fraud really negligent claims, or are they intentional acts for which there is an exclusion under this policy? It's not about whether the insurance company has a duty to represent its insured for frivolous claims. Of course they do. The question is, was there an exclusion that applied for the allegations in this third-party complaint? Well, Your Honor has just said that the insurance company should represent for frivolous claims. But they do. They have a duty to – yes, exactly. Okay, I'm sorry. A complaint has to allege a negligent act. All right. I then misunderstood what you were saying. But nevertheless, they're in less than wrong. That third-party complaint is replete with those words, fraudulent and conspiracy. But where is the beef? Where are the facts to support it? And shouldn't the insurance company say when somebody files this type of frivolous pleading, yes, we will, if not represent you, at least, what do you call it, appoint a lawyer for you? No, no. The question is whether there's an exclusion that applies. Not whether the allegations are frivolous. That's not what the case is about. It's whether this states a complaint alleging negligent acts against Mr. Kavanaugh so that the insurance company is duty-bound to defend. If the allegations in the complaint don't state a cause of action, allege facts that do not state fraud or conspiracy by Mr. Kavanaugh, do not prove anything that Mr. Kavanaugh ever did was wrong or false or fraudulent or unethical. Yes. All right? None of those things, which, by the way, Judge Flanagan found. What case would you cite that says the insurance company has a duty to defend against a complaint that fits within an exclusion but the allegations aren't truthful, therefore there's some other duty? Well, here, Your Honor, here's where I really want you to focus on. What case says that? Yeah. The duty comes from the fact that this complaint was instigated, crafted, and approved by ISPA Mutual. This complaint would not have happened but for those things. Well, that's what you allege, but the question is did they allege negligent acts or were the acts that were alleged intentional, which are excluded from the policy? Your Honor, the way I see that third-party complaint, it alleges no wrongdoing by Mr. Kavanaugh. Because there's no wrongdoing, there can be no intentional acts alleged against him. Because there are no intentional acts by default, it has to follow under the negligence protection. Now, let's hear a case. Give us a case that says that when allegations that are otherwise intentional are frivolous, that they then become negligent acts. What case says that? Your Honor, the point of the matter is that there are no allegations that are. Is there a case that says that what you're saying, that when intentional allegations become frivolous, that they thereby become negligent acts? I think we have to first go to the fact that there is nothing in that pleading that shows that Mr. Kavanaugh acted intentionally in any wrongful way. Okay? So if you're not acting in a wrongful manner intentionally, what is the default? It has to be negligence. Okay? Before we get that far, what is the duty of the insurer in this case? So when the Illinois State Bar gets served or receives somehow from Mr. Kavanaugh that he's being sued by this third person and they review the complaint and they come to a conclusion that the complaint alleges only intentional acts, what's their duty in that case? What should they do next? They could do several things. One, they could say, we're going to depend on you subject to a reservation of rights. Another one, they could say they could deny the defense and then file a DEC action. Which is what they did. And they did that, right? So they had two choices. One, reservation of rights, reserve or reservation of rights, and proceed to defend Mr. Kavanaugh or to file a DEC action. And they chose to file a DEC action. So that's okay so far. Is that right? And when they file the DEC action, you suggest several times in your brief that for some reason, based on, again, essentially the specious arguments of the complaint against Mr. Kavanaugh, that there was a conflict between Illinois State Bar. Because the relationship between Illinois State Bar and the person filing the complaint, there was a conflict. How does a conflict arrive? As a result of this conflict, you were obligated, I'm sorry, you'll have to sit down. Yeah, you will. I was going to ask if I could address that. No, no, no. No, you're not allowed to. I'm sorry, you're not allowed. Now, I'll tell you what we'll do, Counsel, is when we're done with Mr. Bussomani, we'll allow him to reopen for his reply so you can talk to him while Mr. Chambers is making his argument and he'll be able to say whatever you want him to say. Going back, so your argument is that because Illinois State Bar also represents the third party person filing the complaint, there's a conflict, and therefore they should have hired outside counsel or called Mr. Kavanaugh and said, you know what, we're not going to represent you. Get outside counsel. You make that argument in your brief, do you not? Wouldn't they have to do that every time that they have a deck action then? Isn't there a conflict? No. Isn't the problem with conflicts is when the insurer continues to represent an insurer and steers the case towards an ultimate goal of finding it intentional? So if Illinois State Bar retained you, let's say, in this case, and told you, by the way, we could lose a lot of money in this case, we want you to make sure that Mr. Kavanaugh's, the allegations of Mr. Kavanaugh come across as intentional, then we will be saved, you know, the employer. That didn't occur here, right? So go ahead, explain to me why conflict arises and they have to get outside counsel. Under this situation, here's the conflict. Mr. Bogus, represented by Isba Mutual, has a $3 million insurance policy. Mr. Kavanaugh, represented by Isba Mutual, has a $1 million insurance policy. Mr. Isba Mutual is trying to settle Mr. Bogus's case with Joniac, all right? They are offering zero money, okay? They want to settle it for peanuts. In order to settle it, they want to put pressure on Kavanaugh that we're not going to represent and indemnify you, but we're going to bring you into the lawsuit because all that they're seeking is what Kavanaugh's going to get in the judgment or what the judgment is going to be against Bogus. That's all they're seeking in their complaint, right? Therein lies the conflict. Isba Mutual is playing one side, one pocket versus the other, okay? Now, what happens in the case? Eventually, the case goes to trial against Bogus. It settles for $600,000, and Mr. Kavanaugh's client is paid for his judgment, all right? They wanted to pay zero. He had to go to trial. Now, therein lies the conflict. They created this, Your Honor, in order to try to settle the case. We are not being allowed to share the facts. Did you say Bogus' malpractice action settled for $600,000 and then the default judgment of the $900,000 was paid? It was paid. They accepted the settlement for less than the value of their judgment, yes. What was the amount they settled for? Actually, Mr. Scalatro took $450,000 of that settlement. Let me just ask. I think there's a strikingly similar case which you don't address in your brief. It's the Isba Mutual versus Mondo. Okay. Can you try to distinguish those two cases? Yes. I believe that in Mondo, there was really a lawyer who was acting as an agent of some kind of concern, doing business with the Feds, and I forget if it was a risk claim or whatever. Completely different. Completely different in this respect. In Mondo, we had specific allegations of wrongdoing that took it outside of the coverage. Here, we have specious allegations of wrongdoing. You're juxtaposing specious, which is false, from specific. They're completely irrelevant to each other. Something could be a complete violation of the ethics of the lawyer by putting in a completely frivolous act without our allegation, without investigating it at all. But doesn't Mondo say that, well, here's the quote. The court determined that, quote, no duty to defend, quote, the factual allegations and the instant underlying action made clear that the insured's failure to disclose information was allegedly part of his overall scheme to mislead and defraud the insurance trust and not based upon any negligent or potentially negligent conduct. And so here, there is really no way to say that what they're accusing Mr. Kavanaugh of in this complaint, whether it's completely made up and it came from a Ouija board or not, was a negligent act. They are alleging that it was an intentional act on his part, that he was doing it intentionally and fraudulently. Now, if that is a specious claim, as I said before, there is a remedy for a specious claim. But if all they're alleging is an intentional, wrongful act, then how is it considered not within the exclusion for those specific types of acts under your breach of contract claim? Because, Your Honors, they had a duty to investigate this before making that determination. Who had the duty? They did. ESPA Mutual has a duty to investigate. You just can't look at this document and say... But they didn't draft it. Just permit me to say this thing. Look at this document and say, Mr. Kavanaugh, you had, you breached your duty of professional courtesy to Mr. Bogus because you failed to warn him that he was committing malpractice. Is there an obligation under the statutes for an attorney to notify the other party or their attorney when there's a default order entered? Only if they have filed an appearance, Your Honor. And when did Bogus file an appearance? Never. Well, doesn't the third party complaint allege that he did file an appearance? No. They never make that allegation, Your Honor. They don't? Not to my recollection. Then why did Mr. Kavanaugh originally give him notice of a default? He sent notice of default to the defendants, Your Honor, so that they would appear by counsel hoping that there would be insurance involved. That's what most lawyers do. They don't want to deal with pockets that are not deep. They want to have an insurance company. So you send them a notice, I'm going to enter a default. Do you agree with the general principles that if a complaint alleges an intentional act and the policy has an inclusion for intentional acts, that as a general rule there is no duty to defend? Not the way that Your Honor has phrased it, because you have to look at what is underlying that complaint. You can't simply say fraud, fraud, fraud, or intent, intent, intent, and then say, well, you know, this is it, I'm not going to defend you. No, you have to look at it, you have to investigate it, and you have to talk to your insurer. So you're saying that this enormous body of caseload that provides, that where there's an exclusion and the complaint alleges conduct that is contained within the exclusion, that there is a duty to defend? Yes, Your Honor, especially where? What case would you cite? I don't have it on the top of my head. You have it anywhere in your file. I'm not asking you to do it off the top of your head. You filed no reply brief. True. There's never a response in the briefs to us giving us any clue as to what authority you have for the statements you're making today. And now we're asking you specifically, do you have case law precedent that supports this, or is this a novel argument in Illinois? Okay. I don't have case law to support it. I don't believe it's a novel argument when you have the facts that you have in this case. Where you have the insurance company who takes the position that they took, who approves, crafts, and creates a third-party complaint to gain a badge. What evidence do you have that the Illinois State Bar crafted this complaint? Your Honor, based on my experience as an insurance defense lawyer. Based on common sense would tell me that. Common sense and experience. I've been there, I've done that. I know how insurance companies often think. To say that, to confess that you would file false complaints on behalf of an insurer is probably. I'm sorry. I would never do that, Your Honor. I'm saying how insurance companies work. Going back to that though, your theory that they crafted this. Let's assume that you're right. The Illinois State Bar crafted this. That Pretzel Stouffer is there late at night thinking things up to attack their insurance. And they did that. Let's address Justice Epstein's line of questioning in this area. Knowing it's specious and completely a fraud on the quarter, utterly baseless, why didn't you seek 137 sanctions against the third person, against Bogus, for filing this, for doing this? They're completely baseless. You can answer your fees from him. I wanted to dismiss the case against Mr. Kavanaugh. My only interest was to get out as soon as possible from under that case. I had no interest in spending money in pursuing 137 sanctions. I didn't do it. But now you're pursuing an appeal. We're pursuing an appeal because, you know, it costs money to defend Mr. Kavanaugh. Isn't that recoverable under 137 for a totally frivolous? You know, Your Honor, I didn't do it at the time. Okay? But now I'm pursuing an appeal because they filed a death sanction. Why was he so frivolous if the underlying suit actually settled for $450,000? That's what you just told us today. Yeah, but we're talking about not the third-party complaint, Your Honor. No, but there's allegations. The underlying suit is for Mutual had to pay out of pocket $600,000, of which we took $450,000. Yeah, on a malpractice action against Bogus who didn't file his appearance or didn't show up. Right. That was settled for $600,000. Right. And then the underlying suit for Spillatra was settled. True? True, based on that $600,000 Spillatra took. The suit initially was supposedly only worth $25,000. Eventually settled for $450,000. That's correct. The allegations on all sides are rather striking, to use a kind word. Your Honor, if you have a case where the policy limits, if you have a million-dollar case and the policy limits of the insurance are $25,000 and the plaintiff is, and the defendant is destitute, what does the lawyer do? He takes the $25,000. You don't wait for a judgment of a million bucks. Okay? It would be worthless. So I don't see. Now, you wouldn't agree with the other question I asked you, but how about this? Where the complaint alleges intentional acts and there's an exclusion for those acts and the court has a duty to look at the complaint and the policy and compare the allegations. If the allegations allege intentional acts and there's an exclusion for those intentional acts, is there a duty to defect under general Illinois insurance policy defense precedent? Again, generally, Your Honor, you're correct. In this case, under these circumstances, that does not apply because if you look at the components of the complaint and take away all of the fraud and all the conclusions, there is no allegation of wrongdoing, of intentional wrongdoing. But there is a negligence? Where else would we go? If they're claiming wrongdoing, Mr. Kavanaugh, if it's not intentional, it has to be negligent. Where are you getting that from? What case says that? If the allegations aren't intentional, then they're negligent? What are they then, Your Honor? I'm not sure I know of any case that says that when the allegations that were supposedly intentional are frivolous, that they somehow become a negligent complaint. I mean, I'm not aware of any case that suggests that theory. But perhaps if you... We'll give you five minutes for reply. We can wait here for Mr. Chemers. Mr. Chemers. Morning again, Your Honors. May it please the Court, Counsel, for the Plaintiff-Appellee, I.S.P.A. Mutual, Robert Chemers with Adrian Rohr. Your Honors, yesterday as I was driving back from an oral argument in Mount Vernon in the 5th District, I was thinking not about this case, but about the case I was to argue this morning before this Court's 6th Division until I got a call at 3 o'clock that that argument was canceled. Then I started thinking about this case. And I thought it would be easy. Oh, we were on the back burner. Not necessarily. I thought this was going to be easy. Thanks for the compliment. It wasn't meant that way. This one I was appellee. The other one I was appellant. So I had to argue twice. That having been said, I can imagine what Your Honors must have thought when this record was brought to you. 924 pages. You probably thought, how long was this bench trial? To then find out it was a simple summary judgment on a guard variety declaratory judgment suit. Also, it probably was a problem for your clerk's office when a white-covered brief called a reply brief came in instead of a yellow-covered brief. I was surprised by it. There is no reply brief here. It is always, I think, a disservice not only to the appellee. He's argumentative, Mr. Chambers. But to the court. When you hear the reply for the first time during the oral argument. I will argue this by responding to Your Honors' questions, if I may. Justice Epstein, you said the brief of the appellant was filled with thinly-veiled outrage. Perhaps it should have been better to have a coy fig leaf rather than the outrage. That's true. That has been rampant throughout this case from day one. Justice Quinn, you asked what is the duty of the insurer. As did Justice McBride. The duty of the insurer is when it's presented with a lawsuit. Here it was a third-party complaint in a merits malpractice action against Mr. Kavanaugh. Read the allegations of that complaint in the light of the four corners of the policy. The so-called eight corners rule. The four corners of the pleading, the four corners of the policy. We have a policy that's not unusual. It applies to an alleged or actual negligent act, error, or omission in the rendering of or failure to render professional services. The lawsuit against Mr. Kavanaugh was in two counts. It alleged fraud and it alleged a conspiracy to commit fraud. It referred to fraudulent conduct no less than six times. It referred to knowing intentional conduct no less than ten. Clearly, it is not a negligence action. It is not covered. You didn't even hear that from them. You didn't hear. What about the suggestion here that the Illinois State Bar Mutual Insurance Company hired Mr. Koenigsegg, is that how you say his name? Koenigsegg. Koenigsegg. Yes. And the allegations clearly were written to state intentional acts. And the insurance company knows full well that this policy that Mr. Kavanaugh has has this exclusion for intentional acts. Certainly. There is no allegation. There's nothing here that doesn't look a little bit odd or unusual. Well. Illinois State Mutual has hired another attorney to represent Bogus. Bogus, if I'm saying his name correctly. Yes. I apologize. The complaint is full of these allegations that he is the agent of Illinois State Bar. I mean, they hired him, didn't they? ISBN Mutual hired the Koenigsegg and Dillon Law Firm to defend Bogus. Is he their agent? No. He's hired by them to represent another insured in a malpractice case. Sure. Well, as this Court well knows, the attorney, the insurer-insured insurance defense counsel relationship is that so-called tripartite relationship. There may be a business relationship between ISBN Mutual and the Koenigsegg and Dillon Law Firm. But for the purpose of that lawsuit, Mr. Bogus was the client, not ISBN Mutual. Their allegiance was to their client. The third-party complaint that Koenigsegg and Dillon filed did not say it was filed by or on behalf of ISBN Mutual. No, it did not. That is the conspiracy theory of Mr. Bustamante. That is solely a theory. There are no facts. But does he get to go out there rogue and do whatever he wants, or does he actually have to in some way report to the Illinois State Bar Mutual insurance company? I have no reason to believe that Mr. Koenigsegg did not report to ISBN Mutual. So then there's some substance to the suggestion in the complaint that there was a little bit of collusion going on because at the end of the day, he does report to the insurer, and this complaint is carefully drafted to specifically impart the notion of intentional acts, fraudulent acts. It alleged fraud, but that does not assume or presume. And at the same time, the ISBN Mutual company has for its insured the attorney, Mr. Kavanaugh, against whom these allegations are made. Bogus is represented by panel counsel for ISBN Mutual. Panel counsel prepared and filed a third-party complaint against another ISBN Mutual insured that alleged fraud. There is no merit to the contention that ISBN Mutual drafted that third-party complaint, told Koenigsegg and Dillon to draft that third-party complaint, or had anything whatsoever to do with it other than pay the fee associated with it. Those are the allegations, though, in the complaint, that they were working hand-in-hand. Those are the allegations in the counterclaim by Mr. Kavanaugh against ISBN Mutual, which, frankly, were made in the wrong court. The Circuit Court of Cook County Chancery Division was concerned with whether, in the declaratory judgment suit, a suit for fraud and conspiracy to commit fraud falls within an insuring agreement that applies to a wrongful act, which is a negligent act. So you're saying that they should have, that Kavanaugh should have just filed his own suit in the law division, as opposed to this counterclaim? Kavanaugh could certainly have done that. As Justice Epstein asked, he could have filed a Rule 137 motion in that action. The Chancery Court, in the declaratory judgment suit, wasn't concerned with the merits of the third-party complaint, except insofar as whether it did state a covered claim. Was it within the coverage or potentially within the coverage? That's the standard. One of Your Honors asked what that standard was. I believe you did, Justice McBride, about, you know, the false, fraudulent, and groundless lawsuit is not the standard. If we had a reply brief, I would be able to tell this Court that there's a case on point, that the standard of whether there's a duty to defend is not whether a suit fits within groundless, false, or fraudulent. Yes. We all know that. And there's one case specifically, the Fourth District, a case called Farmers v. Danner. The question is whether the allegations fit within the policy. And whether these are negligent. If this is a negligent action at its core, then there would be a duty to defend. That is correct. And unmistakably, these allegations in the third-party complaint, as found by the Court which granted our motion for summary judgment that there was no duty to defend, unmistakably do not fit within the ensuring agreement of this policy. Perhaps. I can assume, like they have been assuming, they were aware of that. So what they did was they threw up this series of pleadings. An affirmative defense which we had stricken, about which they complained. An attempt to get discovery, about which we sought a protective order, which was granted, from which no appeal was taken. A counterclaim that we had dismissed, four counts. An amended counterclaim, four counts. Another hearing that we had dismissed. Which counts were breach of contract, fraud, excuse me. And so when you say, and counsel didn't quite answer this, but when you say that the allegations that are frivolous or fraudulent or whatever are dismissed by a trial judge, that doesn't make the duty to defend somehow appear. No. We took the position. That was how they wanted to amend the complaint. And that's one of the issues, whether the Court should have allowed an amendment. But your position would be that simply because the Court dismisses the complaint, that that doesn't change that the real issue is, are the allegations negligent? Right. The only issue that would have changed is, while the third-party complaint against Cavanaugh was pending, the Court in the Chancery case could determine if there's a duty to defend. When that third-party complaint was dismissed, it certainly had no race judicata effect, as they appear to be arguing. But what it did is it then required, if there is a duty to defend, then we would have a duty to reimburse the defense costs that were incurred. It's no longer an open issue. And the counterclaim that was filed, which we submit to this Court, notwithstanding the argument they made, was properly dismissed. It was properly dismissed because it pled no facts. They allege, for example, a breach of fiduciary duty. It has long been the law in Illinois, and we cite it in at least three, if not four cases in our brief. We have no idea what they think about them. But there is no fiduciary relationship when an insurance company issues a policy. They had a Section 155 count. There's no basis for Section 155 relief against ISB and mutual here. There was no modicum of facts set forth in that count. We did exactly what the law requires. As Justice Quinn found out when the question was posed, what did the insurance company have to do? They either disclaim coverage and turn their back on the insured. They issue a reservation of rights and provide a defense, or they disclaim and they file a complaint for declaratory judgment. We did exactly what the law says we can do. And we prevailed. And there was no argument, none, that the entry of summary judgment on the duty to defend was wrong. Instead, the Court heard an argument about the sideshow of the underlying case, the counterclaim, the counterclaim that was chock full of conclusions and no facts. This is still a fact-pleading state. You can't merely assume all kinds of things based on the experience of the scrivener, as we heard about Mr. Bustamante. Would you give us your view of the merits of the complaint against Mr. Kavanaugh and the theory of the duty that he was required to fulfill? As I recall the third-party complaint that Bogus filed against Kavanaugh, it alleged that he committed fraud and that he was in a conspiracy to defraud. That's all it alleged. My concern on behalf of my client was whether those allegations fell within the insuring agreement. We were convinced they did not. Well, so the skillfully avoided answering that question that I posed. Obviously, from my question, I think that the theory of duty that they have alleged is, at best, sketchy. So he, in my view, was faced with having to defend an outrageous complaint against him. And what really is before us, unfortunately, is only the issue of whether they chose the proper way to try to attack a complaint which, at best, could be termed frivolous. Well, Your Honor, if, in fact, he was faced with defending an outrageous third-party complaint, then the ability to obtain a dismissal under 2615 should have been quick and inexpensive. Instead, it wasn't. And that wasn't ISB and Mutual's fault. The issues with respect to the third-party complaint were best before the law division judge. It was Judge Flanagan who had that before her, not the Chancery Court, which was only concerned with a duty to defend. When Judge Mackey was looking at the third-party complaint and reviewing the policy, his focus was, does this fall within the insuring agreement, not whether it can be proven. And that's the confusion in this case that the defendant has, I think, been prone to from the beginning, is not whether, in fact, they don't even seem to be that concerned with whether it's covered. It's more concerned with could it be proven. And the fact it couldn't be proven, it somehow is ISB and Mutual's fault or problem or part of a conspiracy to put him to an economic exposure that he shouldn't have otherwise had or a conflict, as Justice Quinn inquired about, none of which is relevant to this case. If he's right that this was, indeed, a scheme hatched in the offices of ISB and Mutual to try to effect a settlement of the malpractice case based upon reducing the amount of money that it would take to settle the underlying case, would that have been wrong? It would have been wrong, and it wouldn't be this situation. I take umbrage at the thought that a valued client, the insurance company for the lawyers of this state, the Illinois State Bar Association Mutual Insurance Company, can even be accused, without fact, of conspiring with a panel attorney to basically stick it to another insured. It just doesn't make any sense. In a sense, you're really not sticking it to the other insured if the premise that is suggested by Mr. Bustamante is accurate. In other words, there wasn't really a contemplation that Mr. Kavanaugh would reach into his own pocket to satisfy this third-party complaint, but rather that there would be some type of a global settlement of this matter that would result in ISBA Mutual paying less money on its malpractice claim. And I think you're certainly a very smart man and a very smart lawyer. I think you understand that. So the question then would be, if he was right, would there be any remedy for this? It wouldn't be in this court with respect to the issues we have here. It would be before the law division that dismissed the third-party complaint. And I think that, again, that's part of the confusion here. All of the things Your Honor just said would be appropriately stated in a Rule 137 motion against the pleader of this nefarious third-party complaint, not to Judge Mackey in the coverage case throwing up all these theories of conspiracy and wrongdoing between an insurance company that has a pretty good record and a valued defense firm they use and have used for years. And that's where our problem is with this case. It doesn't belong here. The counterclaim was dismissed because it only had conclusions. You mentioned, Justice Epstein, the Mondo case. The Mondo case is on all fours. Justice Hoffman wrote the opinion for the majority in that case and decided that the policy applies to a negligent act. The argument that they raised in their brief that the adjective negligent only modifies the noun act and doesn't modify error and omission is silly. So we have a policy that would apply to a negligent act but to intentional errors or omissions. That's silly. We cited a case directly on point. We have no idea what they think about it without a reply. That's the TIG v. Joe Rizza case from the federal court. Whether or not this court wants to follow a federal district court decision, it's the only case directly on point. And I think the court there wrote it's been assumed that the adjective negligent applies to the nouns, acts, errors, or omissions, not to just the act. That would become a silly construction. And when you read the entire argument they laid out, every construction issue, every interpretation issue is designed to distort the language, which is not how you read an insurance policy. And that creates the further confusion here, the confusion about a conflict. There is no conflict because there was no duty to defend. I believe they cited the Elko case. Elko only applies where there's a duty to defend. Here there is no duty to defend. The entitlement to discovery, you need something a little more than the conspiracy theory and dismissed counterclaims, dismissed offenses, stricken affidavits. An affidavit that came back as a 191B affidavit from Mr. Kavanaugh that included every allegation of a dismissed amended counterclaim, which was probably close to over 200 averments in this so-called 191B. In other words, every ruling that the trial court made was after a lot of reflection. You've seen the briefs. There are a lot of briefs in this case on every one of these contested motions. And yet we haven't heard that the Court is looking at the summary judgment for the carrier on a de novo basis. It's looking at these other rulings, if they have any basis at all, on an abuse of discretion standard. And there's been no argument that the trial court abused its discretion. For all of these reasons, unless the Court has other questions, I would ask this Court to affirm the judgment for the insurance company. Thank you, Mr. Chairman. Thank you. Mr. Bustamante, briefly. Your Honors, I don't have much more to say. I do want to tell you that in Mr. Kavanaugh's affidavit, and I believe it's in his counterclaim also, that he actually makes the avertment that he informed Mr. Conisic, I am also indisputably sure you're never going to file a third-party complaint against me. They know this going in. And so that's why they draft the complaint in such a manner as to deprive them of coverage. Because otherwise, what's the use of filing a third-party complaint? All they're seeking is the same amount of the judgment that is owed against their and other insurance companies. That's all they want.  Results in the allowing of insurance companies to get away with this type of conduct. Put another way, the failure to have filed a 137 petition allowed it. Your Honor, the 137 petition would have gone against Mr. Bogus and against Mr. Conisic, but not against the insurance company. Well, maybe they would have third-partied in the ISPA like they ended up third-partying in Mr. Kavanaugh. Because if your theory was right and they were acting on orders from above, so to speak, then that would be a proper way to deal with it. But it still is the responsibility of the lawyers who sign their pleadings in a situation where there is a 137 violation. The fact that one remedy existed there does not preclude another remedy over here. All right. Any questions, Your Honor? Thank you very much. Thank you for the briefs and the oral argument. This case will be taken under advisement, and this court will be in recess for about 20 minutes.